UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

Case No. 17-cv-13908
Hon. Victoria A. Roberts
Mag. Judge David R. Grand

      Plaintiffs,

v.

OMIC, LLC, d/b/a OAKLAND MRI;
LUCIA ZAMORANO, M.D., PLC, d/b/a
MICHIGAN BRAIN & SPINE
SURGERY CENTER; SUSAN
SWIDER; and LUCIA JOSEFINA-
SWIDER ZAMORANO, M.D.,

      Defendants.

_____

**DEFENDANTS' AMENDED MOTION TO STRIKE PORTIONS OF
PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f) AND
FOR SUMMARY DISPOSITION PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants OMIC, LLC, d/b/a Oakland MRI ("Oakland MRI"), Lucia

Zamorano, M.D., PLC ("Zamorano PLC"), Michigan Brain & Spine Surgery Center

("Michigan Brain & Spine"), Susan Swider ("Swider") and Lucia Josefina-Swider

Zamorano, M.D., ("Zamorano"), by and through their attorneys, move to strike the

portions of Plaintiffs' Complaint (Dkt. #1) pursuant to Fed. R. Civ. P. 12(f), and for

summary disposition of Plaintiffs' Complaint.

1

Defendants move to strike the allegations in Plaintiffs' Complaint that are identified in the brief below as redundant, immaterial, impertinent, and scandalous.

In addition to striking the identified allegations from the Complaint, Defendants request that the Court abstain from hearing Plaintiffs' claim for declaratory judgment and dismiss Count IX of Plaintiffs' Complaint pursuant to its abstention power and Fed. R. Civ. P. 12(b)(6), and to dismiss Plaintiffs' entire Complaint in light of the Michigan Supreme Court's recent decision in *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,* ___ Mich. ___, 895 N.W.2d 490 (Mich. 2017).

Respectfully submitted,

| JOELSON ROSENBERG PLC | LAW OFFICES OF GARY R. BLUMBERG, PC |
|---|---|
| /s/ Peter W. Joelson | /s/ Gary R. Blumberg |
| Peter W. Joelson (P51468) | Gary R. Blumberg (P29820) |
| pwj@jrlawplc.com | grblumberg@blumbergpc.com |
| Emily Warren (P76675) | *Co-Attorneys for Defendants* |
| ewarren@jrlawplc.com | 15011 Michigan Ave. |
| *Co-Attorneys for Defendants* | Dearborn, MI 48126 |
| 30665 Northwestern Hwy., Ste 200 | (313) 230-1121 |
| Farmington Hills, MI  48334 | |
| (248) 626-9966 fax: (248) 855-9496 | |

Dated: February 13, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY;  and
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

                       Case No. 17-cv-13908
                       Hon. Victoria A. Roberts

     Plaintiffs,                Mag. Judge David R. Grand

v.

OMIC, LLC, d/b/a OAKLAND MRI;
LUCIA ZAMORANO, M.D., PLC, d/b/a
MICHIGAN BRAIN & SPINE
SURGERY CENTER; SUSAN
SWIDER; and LUCIA JOSEFINA-
SWIDER ZAMORANO, M.D.,

     Defendants.

**BRIEF IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f) AND FOR SUMMARY DISPOSITION PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

Statement of Issues Presented ......................................................................i

Controlling or Most Appropriate Authorities ............................................ ii

Cited Authorities ........................................................................................iv

I.     Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)..........................1

       A.     Legal Standards ......................................................................1

       B.     The Court Must Strike Allegations That Are Immaterial, Impertinent,
              and Scandalous ......................................................................2

              1.     Plaintiffs' Allegations Regarding Zamorano's and Swider's
                     Personal Relationship and Personal Finances Are Immaterial,
                     Impertinent, and Scandalous ........................................3

              2.     Plaintiffs' Allegations Regarding Zamorano's Termination from
                     Wayne State University Are Immaterial, Impertinent, and
                     Scandalous ....................................................................4

              3.     Plaintiffs' Allegations Regarding Defendants' "Other
                     Fraudulent Acts" Are Immaterial, Impertinent,
                     and Scandalous..............................................................6

              4.     Plaintiffs' Attorney-Created Charts Are Impertinent ..............10

              5.     Plaintiffs' Prosecutorial Assumptions Should be Stricken from
                     the Complaint as Impertinent and Scandalous.........................10

              6.     Plaintiffs' Requests for Unavailable Relief Must be Stricken
                     from the Complaint ................................................11

II.    Motion to Dismiss Count IX for Declaratory Relief Pursuant to Fed. R. Civ.
       P. 12(b)(6).......................................................................................13

       A.     Legal Standards ...................................................................13

B.　　The Decision in *Covenant* Requires That the Court Dismiss Plaintiffs' Claims to the Extent They Rely Upon or Arise Out of Application of the Michigan No Fault Act ....................................................15

C.　　This Court Should Abstain From Determining Plaintiffs' Claim for Declaratory Relief in Light of the Recent *Covenant* Decision ...........19

　　　1.　　This Court Should Abstain Pursuant to the *Burford* Abstention Doctrine ......................................................................20

　　　2.　　This Court Should Abstain Pursuant to the *Colorado River* Abstention Doctrine .................................................................22

　　　3.　　This Court Should Exercise Its Discretion and Decline Jurisdiction Over Declaratory Judgment Actions....................24

　　　4.　　This Court Should Abstain Based Upon the *Scottsdale* Factors ....................................................................26

III.　　Conclusion & Request for Relief..................................................................28

<u>STATEMENT OF ISSUES PRESENTED</u>

I.   Whether the Court Should Strike the Redundant, Immaterial, Impertinent, and/or Scandalous Allegations in Plaintiffs' Complaint?

Defendants Answer:      Yes.

II.  Whether the decision in *Covenant* precludes the relief requested by Plaintiffs?

Defendants Answer:      Yes.

III. Whether the Court should abstain from hearing Plaintiffs' claim for declaratory judgment in light of the Michigan Supreme Court's recent decision in *Covenant*?

Defendants Answer:      Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 12(b)(6).................................................................13, 14, 28

Fed R. Civ. P. 12(f) .................................................................................1

28 U.S.C. § 1821 ...................................................................................12

28 U.S.C. § 1920 ...................................................................................12

28 U.S.C. § 2201(a) .........................................................................14, 24

*Aetna Casualty and Sur. Co. v. Sunshine Corp.,*
74 F.3d 685 (6th Cir. 1996)...................................................................26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................14

*Bituminous Cas. Corp. v. J & L Lumber Co.,*
373 F.3d 807 (6th Cir. 2004).................................................................27

*Brillhart v. Excess Ins. Co. of America,*
316 U.S. 491 (1942).......................................................................24, 25

*Bronson Methodist Hosp. v. Home-Owners Ins. Co.,*
295 Mich. App. 431, 814 N.W.2d 670 (2012)........................................18

*Burford v. Sun Oil Co.,*
319 U.S. 315, 63 S. Ct. 1098 (1943).............................................15, 20, 22

*Colorado River Water Conservation District v. United States,*
424 U.S. 800 (1976).......................................................................22, 23

*Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,*
___ Mich. ___, 895 N.W.2d 490 (Mich. 2017) .......... 13, 15, 16, 17, 19, 23, 25, 27

*Johnson v. County of Macomb,*
2008 U.S. Dist. LEXIS 38617 (E.D. Mich., May 13, 2008) ................................1, 9

*Lamson & Sessions Co. v. Indemnity Ins. Co. of North America,*
1999 U.S. Dist. LEXIS 17412 (N.D. Ohio, Oct. 19, 1999)...............................10, 11

*Llewellyn-Jones v. Metro Prop. Group, Ltd. Liability Co.,*
22 F. Supp. 3d 760 (E.D. Mich. 2014)........................................................................1

Morse v. Weingarten,
777 F. Supp. 312 (S.D.N.Y. 1991) ...............................................................1, 4, 10

*Pigford v. Veneman*,
215 F.R.D. 2 (D.D.C. 2003).......................................................................................2

*Reeves v. Wallington*,
2008 U.S. Dist. LEXIS 117098 (E.D. Mich., Nov. 6, 2008)...................................11

*Scottsdale Ins. Co. v. Flowers,*
513 F.3d 546 (6th Cir. 2008)........................................................................26, 27, 28

*State Farm Mut. Automobile Ins,. Co. v. Universal Rehab Servs.,*
2017 U.S. Dist. LEXIS 210318 (E.D. Mich, Dec. 21, 2017) ..................................16

*W. A. Foote Mem'l Hosp. v. Michigan Assigned Claims Plan,*
2017 Mich. App. LEXIS 1391, 2017 WL 3836645 (Ct. App. Aug. 31, 2017).......16

*Wilton v. Seven Falls Co.,*
515 U.S. 277, 115 S. Ct. 2137 (1995).........................................................14, 24, 25

## CITED AUTHORITIES

Fed. R. Civ. P. 12(b)(6).................................................................13, 14, 28

Fed R. Civ. P. 12(f) .....................................................................................1

28 U.S.C. § 1821 ........................................................................................12

28 U.S.C. § 1920 ........................................................................................12

28 U.S.C. § 2201(a) ...............................................................................14, 24

*Advanced Surgery Ctr., LLC v. Allstate Prop. & Cas. Ins. Co.*,
2017 U.S. Dist. LEXIS 146340 (E.D. Mich., Sep. 11, 2017)..................16

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
257 Mich. App. 365, 670 N.W.2d 569 (2003) .........................................18

*Aetna Casualty and Sur. Co. v. Sunshine Corp.*,
74 F.3d 685 (6th Cir. 1996).....................................................................26

*Allstate Ins. Co. v. Mercier*,
913 F.2d 273 (6th Cir. 1990)....................................................................25

*Allstate Ins. Co. v. State Farm Mut. Automobile Ins. Co.*,
2017 Mich. App. LEXIS 1522 (Ct. App., Oct. 3, 2017).........................15

*American Home Assurance Co. v. Evans*,
791 F.2d 61 (6th Cir. 1986).....................................................................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................14

*Beard v. Worldwide Mortg. Corp.*,
354 F. Supp. 2d 789 (W.D. Tenn. 2005) .................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................14

*Bituminous Cas. Corp. v. J & L Lumber Co.,*
373 F.3d 807 (6th Cir. 2004)......................................................................27

*Brillhart v. Excess Ins. Co. of America,*
316 U.S. 491 (1942)................................................................................24, 25

*Bronson Methodist Hosp. v. Home-Owners Ins. Co.,*
295 Mich. App. 431, 814 N.W.2d 670 (2012)..........................................18

*Burford v. Sun Oil Co.,*
319 U.S. 315, 63 S. Ct. 1098 (1943)...........................................15, 20, 22

*Colorado River Water Conservation District v. United States,*
424 U.S. 800 (1976)................................................................................22, 23

*Coulthard v. Trott & Trott, PC,*
2013 U.S. Dist. LEXIS 193971 (E.D. Mich., Nov. 25, 2013)...................2

*Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,*
___ Mich. ___, 895 N.W.2d 490 (Mich. 2017) .......... 13, 15, 16, 17, 19, 23, 25, 27

*Crawford Fitting Co v. J T Gibbons, Inc.,*
482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987).......................12

*Gentry v. Wayne County.,*
2010 WL 4822749 (E.D. Mich. Nov. 22, 2010)......................................22

*Green v. Mansour,*
474 U.S. 64, 106 S. Ct. 423 (1985).........................................................24

*In re Travel Agent Comm'n Antitrust Litigation,*
583 F.3d 896 (6th Cir. 2009) ..................................................................14

*Johnson v. County of Macomb,*
2008 U.S. Dist. LEXIS 38617 (E.D. Mich., May 13, 2008) ................1, 9

*Lamson & Sessions Co. v. Indemnity Ins. Co. of North America,*
1999 U.S. Dist. LEXIS 17412 (N.D. Ohio, Oct. 19, 1999)..............10, 11

*Llewellyn-Jones v. Metro Prop. Group, Ltd. Liability Co.,*
22 F. Supp. 3d 760 (E.D. Mich. 2014)........................................................................1

*McGill v. Automobile Ass'n,*
207 Mich. App. 402, 526 N.W.2d 12 (1994)..........................................................18

*Moon v. Harrison Piping Supply,*
375 F. Supp. 2d 577 (E.D. Mich. 2005)..................................................................21

Morse v. Weingarten,
777 F. Supp. 312 (S.D.N.Y. 1991) ................................................................1, 4, 10

*Muci v. State Farm Mut. Auto. Ins. Co.,*
478 Mich. 178, 732 N.W.2d 88 (2007)..................................................................21

*Nieves v. Bell Indus.,*
204 Mich. App. 459, 517 N.W.2d 235 (1994)........................................................18

*Nilavar v. Mercy Health Sys.,*
142 F. Supp. 2d 859 (S.D. Ohio 2000) ..................................................................14

*Ogle v. Columbia Gas Trans., LLC,*
513 F. Appx. 520 (6th Cir. 2013)............................................................................14

*Pigford v. Veneman,*
215 F.R.D. 2 (D.D.C. 2003)......................................................................................2

*Reeves v. Wallington,*
2008 U.S. Dist. LEXIS 117098 (E.D. Mich., Nov. 6, 2008)..................................11

*Rouse v. Daimler Chrysler Corporation,*
300 F.3d 711 (6th Cir. 2002)..................................................................................20

*Scottsdale Ins. Co. v. Flowers,*
513 F.3d 546 (6th Cir. 2008)........................................................................26, 27, 28

*Sentry Ins. Mut. Co. v. Flom's Corp.,*
818 F. Supp. 187 (E.D. Mich. 1993)......................................................................25

*Stanfield v. Horn*,
704 F. Supp. 1486 (M.D. Tenn. 1988) .......................................................................2

*State Farm Mut. Automobile Ins,. Co. v. Universal Rehab Servs.*,
2017 U.S. Dist. LEXIS 210318 (E.D. Mich, Dec. 21, 2017) ...................................16

*W. A. Foote Mem'l Hosp. v. Michigan Assigned Claims Plan*,
2017 Mich. App. LEXIS 1391, 2017 WL 3836645 (Ct. App. Aug. 31, 2017) .......16

*W. Va. Univ. Hosps. V. Casey*,
499 U.S. 83, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991)...........................................12

*Warrior Sports, Inc. v. STX, L.L.C.*,
596 F. Supp. 2d 1070 (E.D. Mich. 2009)..................................................................15

*Wilton v. Seven Falls Co.*,
515 U.S. 277, 115 S. Ct. 2137 (1995).........................................................14, 24, 25

*Wrench Limited Liability Co. v Taco Bell Corp.*,
36 F. Supp. 2d 787 (W.D. Mich. 1998) .....................................................................1

## I.   Motion to Strike Pursuant to Fed. R. Civ. P. 12(f).

### A.   Legal Standards.

Fed. R. Civ. P. 12(f) permits that Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A motion to strike under Fed. R. Civ. P. 12(f) must be brought "before responding to the pleading."  This is Defendants' first responsive pleading, and their Motion to Strike is therefore timely.

"[A] court has 'liberal discretion' to strike such filings as it deems appropriate under Rule 12(f).  *Johnson v. County of Macomb*, 2008 U.S. Dist. LEXIS 38617, at *2-3 (ED Mich., May 13, 2008) (citing Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references to defendant's criminal conviction and income level)).   [A] motion to **strike** should be granted where the complaint contains immaterial allegations that have no bearing on the subject matter of the litigation. *Wrench Limited Liability Co. v Taco Bell Corp.*, 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998).

An "immaterial matter" is that which has "no essential or important relationship to the claim for relief or the defenses being pleaded."  *Llewellyn-Jones v. Metro Prop. Group, Ltd. Liability Co.,* 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014). An "impertinent matter" consists of "statements that do not pertain, and are not necessary, to the issues in question."  *Id.*  A "scandalous matter" generally refers to

1

any allegation "that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that 'detracts from the dignity of the court.'" *Coulthard v. Trott & Trott, PC*, 2013 U.S. Dist. LEXIS 193971, at \*3-4 (E.D. Mich., Nov. 25, 2013).  "A scandalous matter is that which improperly casts a derogatory light on someone, most typically a party to the action."  *Stanfield v. Horn*, 704 F. Supp. 1486, 1487 (M.D. Tenn. 1988) (citing Wright and Miller, *Federal Practice and Procedure* § 1382 (1969)).  "Scandalous" also includes allegations that cast "a cruelly derogatory light on a party or other person."  *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003).

> **B.    The Court Must Strike Allegations That Are Immaterial, Impertinent, and Scandalous.**

Plaintiffs deliberately included allegations and statements in the Complaint that have absolutely nothing to do with the named Defendants in this case or any enumerated counts detailed in the Complaint.  Plaintiffs included these allegations to induce the Court into pre-judging Defendants and concluding that, because Defendants had been *accused* of wrongdoing in the past, they necessarily acted in conformity with those accusations during the events alleged in the Complaint. Plaintiffs included other allegations that relate to the individual Defendants' personal lives and finances that do not even arguably have anything to do with Plaintiffs' claims.

### 1. Plaintiffs' Allegations Regarding Zamorano's and Swider's Personal Relationship and Personal Finances Are Immaterial, Impertinent, and Scandalous.

Plaintiffs allege in three separate paragraphs that Defendant Zamorano and Defendant Swider are "domestic partners." (Dkt. #1, ¶ 9, 39, 44, 196, and 197). The sexual orientation and/or marital status of Defendants Zamorano and Swider cannot, under any circumstance, be considered "material" to Plaintiffs' claims. There is no requirement under the RICO Act that alleged co-conspirators be married to each other, be engaged in a personal relationship, or even that they share in the financial gain resulting from the alleged conspiracy or scheme. Plaintiffs included these allegations to inform a finder of fact of Defendants' sexual orientation, which they do not typically broadcast to strangers or the public, and then to lead the finder of fact to make improper conclusions about the morality or propriety of Defendants Zamorano and Swider.

These same paragraphs (Dkt. #1, ¶ 9, 39, 44, and 196) in addition to paragraphs 102-105 and 197), include immaterial and impertinent allegations regarding the individual Defendants' ownership of houses and intermingling of personal finances. For example, paragraph 103, which alleges: "Zamorano and Swider jointly own at least five (5) houses that have a collective estimated fair market value of at least $4 million."

3

In *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991), a case involving alleged securities fraud, the court granted a motion to strike allegations related to one of the defendant's income and previous criminal conviction as "immaterial and impertinent to this case." The same is true here. Zamorano's and/or Swider's personal finances and their co-ownership of houses supposedly valued in the millions is immaterial and impertinent to this case. The allegations that Defendants Zamorano and Swider are "domestic partners," own "five houses," and "comingle" their finances are clearly redundant, as they appear in multiple paragraphs, and are immaterial to Plaintiffs' claims. Paragraphs 9, 39, 44, and 102-105 must be stricken from the Complaint and the record.

### 2. Plaintiffs' Allegations Regarding Zamorano's Termination from Wayne State University Are Immaterial, Impertinent, and Scandalous.

Plaintiffs included allegations related to Zamorano's termination from her employment at Wayne State University, even though these allegations are immaterial, impertinent, scandalous, and apropos of nothing even remotely related to the enumerated counts in the Complaint. Her previous employment at Wayne State University has absolutely nothing to do with the pertinent allegations in the Complaint. The circumstances surrounding her termination and subsequent wrongful termination lawsuit likewise have *absolutely nothing to do with this case.* Plaintiffs included these allegations (found at paragraphs 82-89 and 128) solely to

4

harass and embarrass Zamorano.  The following paragraphs contain allegations that are nothing more than Plaintiffs' summations or assumptions about Zamorano's termination and are immaterial and impertinent.  For example, see paragraph ¶ 82, which alleges:  "Less than five (5)  months prior to the organization of Michigan Brain & Spine by Zamorano, she was fired from a clinical faculty position at Wayne State University of making thousands of dollars of unauthorized charges on her university-issued credit card."

None of these allegations relate in any way to the actual counts alleged against any of the Defendants in the Complaint.  The events took place in 2005, more than four years *before* the alleged scheme at issue in this case began (in 2009, according to Plaintiffs).  Dr. Zamorano followed the required grievance procedures at Wayne State University and her appointment as Clinical Professor of Neurosurgery was restored in 2007 and she held this appointment until 2014.  From 2010 to the present, she has held an appointment as Clinical Professor of Neurosurgery at Oakland University William Beaumont School of Medicine.  Events that allegedly occurred four years before the relevant time period stated in the Complaint and that are not even arguably similar or related to the alleged conduct in the Complaint cannot possibly be pertinent or material.  Paragraphs 82-89 and 128 of the Complaint, as well as Exhibit 3 (Opinion and Order in Case No. 07-12943) must be stricken.

### 3. Plaintiffs' Allegations Regarding Defendants' "Other Fraudulent Acts" Are Immaterial, Impertinent, and Scandalous.

Beginning at paragraph 127 of the Complaint, Plaintiffs state a litany of allegations that they essentially admit have nothing to do with the enumerated counts or relevant allegations in this case. Allegations of Swider's involvement with other doctors or unrelated entities who were accused of improper conduct, references to Ram Gunabalan's Affidavit (which does not mention *any* of the Defendants in this case), and Swider's testimony in unrelated actions regarding the conduct individuals not parties to this case and who are not even alleged to have been part of the supposed scheme in this case are clearly immaterial and impertinent. Plaintiffs admit as much by labeling this section of the Complaint "Other Fraudulent Acts" and stating that the Defendants "have a long history of participating in and associating with fraudulent schemes" without making *any* connection between these "other fraudulent acts" and the facts or allegations in this case.

Paragraphs 127 to 153 consist of allegations of Defendants' peripheral involvement or loose association with other entities or individuals who have been accused of fraud or other wrongful conduct. Paragraph 128 must be stricken for the reasons stated above, as that paragraph consists solely of a repeated allegation that Zamorano was terminated from Wayne State University.

Paragraphs 129 to 130 consistent of impertinent allegations that Swider had testified against Vivek Sehgal in an unrelated matter.  Sehgal is not a party to this case and is not alleged to have been involved in any conspiracy or scheme that took place during the relevant time period.

Paragraphs 131-141 and 145 are based upon unverified, self-serving statements made by Ram Gunabalan, a convicted felon currently serving a prison sentence.  ***Gunabalan's Affidavit does not mention Zamorano, Swider, Oakland MRI, or Michigan Brain & Spine***.  The allegations in Gunabalan's Affidavit are not even remotely related to the Defendants in this case.  Plaintiffs attempt to make a connection by alleging that Swider testified against Sehgal, who is mentioned in Gunabalan's Affidavit.  This "connection" is non-existent and does not permit Plaintiffs to regurgitate the scandalous allegations in Gunabalan's Affidavit in the Complaint.

Paragraphs 142 to 144 contain allegations that Sehgal (not a party to this case) improperly read MRI reports, and inflated and set unreasonable rates for MRIs performed at Bio-Magnetic.  Sehgal's conduct or Swider's testimony about Sehgal's conduct are not material or pertinent to this case.  If Plaintiffs believe that the prices set by the Defendant entities are based upon the inflated rates of Bio-Magnetic and therefore Defendant's rates are also too high, *then Plaintiffs should have alleged*

*that.*  The extraneous and scandalous accusations about Sehgal, Gunabalan, and Mehta are not relevant to Plaintiffs' claims.

Paragraphs 146 and 147 are allegations against Dr. Reese James, who is not a party to this case, is not alleged to have been part of the scheme at issue in this case, and has nothing to do with this case.  These allegations are included to give the Court or finder of fact the false impression that Defendants are somehow associated with a doctor who was suspended from the practice of medicine for reasons that Plaintiffs conveniently omitted from the Complaint.

Paragraphs 148 and 149 are allegations that Zamorano is the subject of an administrative complaint. These allegations are immaterial, impertinent, and scandalous, particularly considering that the complaint has not been resolved or adjudicated.  Plaintiffs conclude this entirely irrelevant section of the Complaint by announcing that the above "facts" are "evidence" that the fraud described in the Complaint is "not a departure from the normal business practices of the defendants, but rather is just the latest in a string of actions meant to deceive insurers and others for the defendants' own financial benefit."  This allegation, and the allegations in the preceding paragraphs (Dkt. #1, ¶ 127 to 150) are essentially that Zamorano and Swider know other individuals who have been disciplined or accused of wrongful conduct.  The only possible reason for Plaintiffs to include these allegations is to inflame the reader and give the false impression that Defendants are guilty-by-

8

association with individuals or entities who are not parties to this case or alleged to have been part of the scheme at issue in this case.

Paragraphs 151 to 154 relate to Swider's supposed marketing of Oakland MRI to attorneys who then supposedly referred patients to Oakland for MRIs. Plaintiffs included these allegations to give the impression that improper attorney referrals were part of the alleged conspiracy, but failed to make any connection to the enumerated counts in the Complaint. Instead, Plaintiffs just state that Swider, who is not an attorney, did not have an explanation for how attorneys could refer clients to have MRIs or other services at a specific facility. Plaintiffs do not provide any authority prohibiting an attorney (or other lay person) from telling another individual about an MRI clinic and suggesting that he or she use a specific facility for MRI services. Plaintiffs refer their insureds to have insurance-paid medical examinations at particular facilities all the time; Plaintiffs failed to allege how Swider's conduct is different and therefore prohibited, or why this relates in any way to the allegations in the Complaint. There are no allegations that attorneys or attorney-referrals were part of the RICO conspiracy.

The allegations in paragraphs 127 to 154 are equally, if not more, immaterial, impertinent, and scandalous, as the allegation that was stricken in *Johnson v. County of Macomb*, 2008 U.S. Dist. LEXIS 38617, at *2-3 (ED Mich., May 13, 2008). In that case, the Court struck an allegation that one of the parties was related to a person

"with known ties to organized crime."  Citing *Morse v. Weingarten*, the Court struck the allegation from the record.  For the same reason, the allegations in paragraphs 127 to 153 must be stricken.

### 4.    Plaintiffs' Attorney-Created Charts Are Impertinent.

Paragraphs 92, 100, 474, 478-479, 531, 532, and 564-566 are attorney-created charts or graphs that contain information that is redundant and/or immaterial and impertinent to the Complaint.  These paragraphs contain charts or graphs that simply repeat other allegations in a graph or chart form, and add nothing substantive to the Complaint or relevant allegations.  In *Lamson & Sessions Co. v. Indemnity Ins. Co. of North America*, 1999 U.S. Dist. LEXIS 17412, at *4-7 (N.D. Ohio, Oct. 19, 1999), the court struck from the complaint "flow charts created by counsel" because the information was "unnecessary at this stage of the litigation."  This Court should do the same and strike paragraphs 92, 100, 474, 478-479, 531, 532, and 564-566 from the Complaint.

### 5.    Plaintiffs' Prosecutorial Assumptions Should be Stricken from the Complaint as Impertinent and Scandalous.

Plaintiffs and their counsel apparently fancy themselves United States prosecutors, evidenced by the allegations in paragraphs 649 and 679 that Plaintiffs' baseless accusations "amount to indictable offenses."  This is an unfounded legal argument, a misstatement of applicable law, and well beyond the scope of the enumerated counts in the Complaint.  It is true that the RICO Act has both a civil

and criminal basis; however, Plaintiffs do not have standing to bring a criminal RICO complaint, and so their references to a criminal statute are impertinent and scandalous, and made only to inflame the reader and to intimidate and harass Defendants. In *Lamson & Sessions Co. v. Indemnity Ins. Co. of North America*, 1999 U.S. Dist. LEXIS 17412, at *4-7 (N.D. Ohio, Oct. 19, 1999), the court struck from the complaint numerous paragraphs that contained "legal arguments and citations which are unnecessary at the pleading stage of the litigation." *Id.* For the same reasons, paragraphs 649 and 679 should be stricken from the Complaint as impertinent and scandalous.

### 6. Plaintiffs' Requests for Unavailable Relief Must be Stricken from the Complaint.

In paragraph 636 of the Complaint, and in the requests for relief under sections VI (b) and VII (b) on page 132 of the Complaint, Plaintiffs demand, as part of their alleged damages, their "investigative costs." There is no authority that permits Plaintiffs to recover the costs they incurred before filing the lawsuit or investigating Defendants as damages or costs. "A motion to strike should also be granted where the requested relief is unavailable." *Reeves v. Wallington*, 2008 U.S. Dist. LEXIS 117098, at *7 (E.D. Mich., Nov. 6, 2008).

A prevailing RICO plaintiff is permitted to recover damages as set forth in § 1964(c), which includes "the cost of the suit." § 1964(c) does not define "cost of the suit" to include pre-suit "investigative costs." Absent statutory or other authority,

11

"costs" to be taxed by a prevailing party are limited to those costs stated in 28 U.S.C. § 1920, which include transcript fees, printing, witness fees, copying costs, docket fees, court-appointed expert fees, and interpreter fees. § 1920 does not contemplate taxation of pre-suit costs. When deciding a request for taxation of the expenses of a litigant's witness as costs, the United States Supreme Court held that "federal courts are bound by the limitations set out in 28 U. S. C. § 1821 and § 1920." *Crawford Fitting Co v. J T Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 96 L. Ed. 2d 385, 393 (1987). This interpretation was affirmed by the United States Supreme Court in *W. Va. Univ. Hosps. V. Casey*, 499 U.S. 83, 87, 111 S. Ct. 1138, 113 L. Ed. 2d 68, 75-76 (1991). In *Casey,* the Court declined to include fees for services rendered by an expert employed by a party in a nontestimonial advisory capacity, noting that none of the categories listed in § 1920 could be reasonably read to include such fees. The Court further held that § 1920 (and 28 U.S.C. § 1821) to impose "express limitation upon the types of costs which, absent other authority, may be shifted by federal courts." The relief requested by Plaintiffs in the paragraphs of the Complaint cited above must be stricken because the relief requested is simply not available to Plaintiffs.

Allstate cannot rely on anything submitted by doctors because the doctor cannot compel payment or have any right to receive payment. Allstate's fraud claim in this case is based upon payments made pursuant to the No Fault Act to healthcare providers who

have no standing to pursue payment and no right to receive benefits.  It is inconsistent for Allstate to now allege fraud against the healthcare providers who

## II.   Motion to Dismiss Count IX for Declaratory Relief Pursuant to Fed. R. Civ. P. 12(b)(6).

Count IX for Declaratory Relief must be dismissed because of the Michigan Supreme Court's recent decision in *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,* ___ Mich. ___, 895 N.W.2d 490 (Mich. 2017).  The *Covenant* decision has a direct impact on the viability of Plaintiffs' claim for Declaratory Relief in this case because in *Covenant,* the Michigan Supreme Court determined that providers such as Defendants here do not have standing to pursue direct causes of action against insurers to collect no-fault benefits.  The decision in *Covenant* requires, at a minimum, that any component of Plaintiffs' Complaint involving unpaid bills, including Plaintiffs' Count IX for Declaratory Relief be dismissed.  The *Covenant* decision also provides that insurers, such as Plaintiffs, have no obligation to pay anything to healthcare providers, which obviates Plaintiffs' fraud claim (and the fraud-based RICO claims) because Plaintiffs' alleged reliance on Defendants' invoices is unreasonable, particularly given their lack of obligation to pay Defendants.

### A.   Legal Standards.

To avoid dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."

13

*Ogle v. Columbia Gas Trans., LLC*, 513 F. Appx. 520, 522, (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Allegations "must be enough to raise a right to relief above the speculative level."  *In re Travel Agent Comm'n Antitrust Litigation*, 583 F.3d 896, 903 (6th Cir. 2009).  Plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. at 678).  "A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements."  *Nilavar v. Mercy Health Sys.*, 142 F. Supp. 2d 859, 867 (S.D. Ohio 2000).  Rule 12(b)(6) "allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery."  *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 797 (W.D. Tenn. 2005).  A plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts are not required to accept as true legal conclusions couched as factual allegations. *Id.*  Together the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory.  Federal courts are given substantial discretion in deciding whether to exercise their declaratory relief jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-86, 115 S. Ct. 2137 (1995). "[A]t times the better exercise of

discretion favors abstention, '[e]ven assuming that the immediacy and reality prerequisites for declaratory judgment relief have been met.'" *Warrior Sports, Inc. v. STX, L.L. C.,* 596 F. Supp. 2d 1070, 1077 (E.D. Mich. 2009). Furthermore, abstention is also appropriate under the standards articulated below in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S. Ct. 1098 (1943).

> **B.    The Decision in *Covenant* Requires That the Court Dismiss Plaintiffs' Claims to the Extent They Rely Upon or Arise Out of Application of the Michigan No Fault Act.**

Plaintiffs' claims, according to the Complaint, arise out of "payments made by Allstate to the defendant clinics in reliance upon the false representations that they were eligible to receive reimbursement under the Michigan No-Fault Act." (Dkt. #1, ¶ 19) and that Defendants billed Plaintiffs for services that were not "reasonably necessary and were not ordered by a physician," or that Defendants engaged in "upcoding," or billed Plaintiffs for amounts that were not "reasonable or customer under Michigan's No-Fault Act." (Dkt. #1, ¶ 20). There are no allegations that any Defendant billed Plaintiffs for services that were never performed.

The ruling in *Covenant* that a healthcare provider does not have a right to recover benefits from a no-fault insurer "apparently precludes a healthcare provider from being a 'claimant' under the no-fault act." *Allstate Ins. Co. v. State Farm Mut. Automobile Ins. Co.*, 2017 Mich. App. LEXIS 1522, *16 (Ct. App., Oct. 3, 2017). In *Covenant*, the Michigan Supreme Court held that healthcare providers have no

statutory right to recover no-fault benefits directly from an insurer.  "[I]t, therefore, follows that no-fault insurers do not have any statutory duty to reimburse healthcare providers directly for services it provided to an insured under the no-fault act." *State Farm Mut. Automobile Ins,. Co. v. Universal Rehab Servs.*, 2017 U.S. Dist. LEXIS 210318, at *4-6 (E.D. Mich, Dec. 21, 2017).  *Covenant* has consistently been applied retroactively (*Id.* (citing *W. A. Foote Mem'l Hosp. v. Michigan Assigned Claims Plan*, 2017 Mich. App. LEXIS 1391, 2017 WL 3836645, at *14 (Ct. App. Aug. 31, 2017)); see also *Advanced Surgery Ctr., LLC v. Allstate Prop. & Cas. Ins. Co.*, 2017 U.S. Dist. LEXIS 146340, at *9 (E.D. Mich., Sep. 11, 2017).

*State Farm Mut. Automobile Ins. Co. v. Universal Rehab Servs.* clarified that healthcare providers, such as Defendants, do not have any statutory right to receive or to sue for payment of benefits under the No Fault Act.  It further clarified that insurers, such as Plaintiffs, have no obligation to pay Defendants benefits under the No Fault Act.  The retroactivity decisions provide that these respective rights and obligations *never* existed, and therefore did not exist at the time of the events alleged in the Complaint (Dkt. #1).

Plaintiffs' Complaint fails to state a claim for which relief may be granted to the extent it requests a declaration that Plaintiffs do not have any statutory obligation to pay outstanding invoices for no fault benefits directly to Defendants—the *Covenant* ruling is equivalent to that declaration and this Court's intervention would

be improper and superfluous.  Plaintiffs also failed to state a claim for which relief may be granted to the extent its claims are based upon Defendants' alleged "upcoding" or billing amounts that Plaintiffs allege are not customary or reasonable. Under *Covenant*, Defendants do not have standing to pursue payment of a bill that Plaintiffs did not pay or of which Plaintiffs only paid a portion, and Plaintiffs do not and did not have any obligation to pay any amount of money to Defendants; the fact that Defendants submitted a bill that was in an amount that Plaintiffs believe to be excessive is immaterial and cannot serve as the basis of a fraud or conspiracy claim, and a declaratory judgment regarding the reasonableness of Defendants' prices or invoices would be improper and violative of the Legislature's decision to not include price limits in the No Fault Act.[1]

Under *Covenant,* Plaintiffs, as insurers, do not have and never had any obligation to pay or respond to Defendants' bills or claims they submitted to Plaintiffs for no fault benefits.  If Plaintiffs chose to pay nothing or only a portion of any particular bill, Defendants had no direct legal recourse to compel payment. This lack of obligation to pay anything to Defendants and Defendants' lack of standing to pursue payment combined with Plaintiffs' affirmative duty to investigate

---

[1] Allstate, by its counsel in this case, has attempted to induce both this Court and the Oakland County Circuit Court to fix or limit the prices a provider may charge for certain services.  Both attempts were unsuccessful.  See Oakland County Circuit Court Case No. 2016-155165-CZ and E.D. Mich. Case No. 2016-cv-10290.

and challenge the reasonableness of the charges precludes Plaintiffs from satisfying the "reasonable reliance" element of their fraud-based claims.  The Michigan No-Fault Act provides Plaintiffs with a comprehensive and readily available method for determining the reasonableness of each bill submitted to them by any provider. Indeed, "insurers are *required* to challenge the reasonableness of charges, and providers should expect no less."  See *Bronson Methodist Hosp. v. Home-Owners Ins. Co.,* 295 Mich. App. 431, 448, 814 N.W.2d 670, 680 (2012) (citing *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 378, 670 N.W.2d 569, 577 (2003)) (emphasis in original); and *McGill v. Automobile Ass'n,* 207 Mich. App. 402, 408, 526 N.W.2d 12 (1994).

Essential to any fraud claim is that the plaintiff's reliance on the alleged misrepresentation must be reasonable.  "There can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Indus*., 204 Mich. App. 459, 464, 517 N.W.2d 235, 238 (1994).  In this case, Plaintiffs not only had the means, but a *duty* to make an independent determination of the reasonableness and necessity of each charge for services provided to its insureds. Plaintiffs' ability, but failure, to do so does not relieve it of the element of fraud requiring reliance to be *reasonable.*

**C.      This Court Should Abstain From Determining Plaintiffs' Claim for Declaratory Relief in Light of the Recent *Covenant* Decision.**

The underlying events for each of Plaintiffs' claims can be placed into one of three categories: (1) claims for which Defendants submitted bills that Plaintiffs paid as the result of litigation; (2) claims for which Defendants submitted bills that Plaintiffs paid in the normal course of business; and (3) claims for which Defendants submitted bills but Plaintiffs have not yet paid.

Claims for which bills were paid as the result of litigation are barred by the doctrines of res judicata and/or collateral estoppel and cannot be re-litigated in this case. Claims for which bills were submitted by Defendants but have not yet been paid cannot be adjudicated in this case because doing so would severely impair or eradicate the rights of the insureds to pursue payment of these bills in state court. The *Covenant* decision makes it impossible for Defendants, as service/treatment providers, to bring a direct cause of action against Plaintiffs to recover unpaid bills. If this Court grants Plaintiffs' request for a declaratory judgment that all unpaid bills do not have to be paid, this Court will have unfairly determined the rights of insureds who are not parties to this case and would also be providing a ruling which is not consistent with the ruling of the Michigan Supreme Court in *Covenant*.

19

### 1.    This Court Should Abstain Pursuant to the *Burford* Abstention Doctrine.

Abstention is appropriate under the doctrine of *Burford* when (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *Rouse v. Daimler Chrysler Corporation,* 300 F.3d 711, 716 (6th Cir. 2002).  The goal of this abstention doctrine is to "avoid conflict with a state's administration of its own affairs." *Id.*

Michigan courts are the proper forum for resolution of No-Fault disputes. The choice of the Michigan government to allocate this responsibility to the state courts rather than to a state agency (or a Federal Court) should have no effect on the state's ability to control policy on such an inherently state-specific issue as no-fault insurance.  This is a classic example of a case that requires *Burford* abstention. Michigan's No-Fault Act is a particularly unique state-law regime which is unquestionably "of substantial public import."

The import of these issues goes beyond the case at bar, as demonstrated by the hundreds (perhaps thousands) of state-court cases litigating these issues. Plaintiffs are asking this Court to impose a billing moratorium for ALL claims submitted by Defendants to Plaintiffs, not just for patients that may be the subject of

20

this Complaint, but for ALL claims, including future claims.  In *Moon v. Harrison Piping Supply,* 375 F. Supp. 2d 577 (E.D. Mich. 2005), *reversed in part on other grounds,* 465 F.3d 719 (6th Cir. 2006), the court decided a similar abstention question for workers' compensation benefits. Despite the plaintiff's arguments to the contrary, the court found that the case "bears upon Michigan's significant interest in safeguarding the policy balance that the legislature struck" and that "this federal forum would have minimal interest in determining Plaintiff's entitlement to workers' compensation benefits." *Id.* at 590. The court ultimately did not abstain, but only because the plaintiff's RICO claim was dismissed for other reasons, thus depriving the federal court of jurisdiction. *Id.*  If workers' compensation legislation, which is present in every state even if with different details, is a sufficiently important state interest to warrant abstention, then Michigan's No-Fault Act must be an even clearer justification because it is the only one of its kind.

The Michigan Supreme Court has reiterated the comprehensive nature of the no-fault statutory scheme, stating that it was "designed to cover contingencies that could arise, including…the process for making a claim, the procedures for investigation by the insurer, and the range of available enforcement tools. All of which are found within the four corners of the [Act]." *Muci v. State Farm Mut. Auto. Ins. Co.,* 478 Mich. 178, 187-88, 732 N.W.2d 88 (2007).  This Court should, like the *Moon* court, choose not to endanger the legislature's chosen policy.  The Act

21

provides the proper methods for resolving these issues in state court. This Court should ignore Plaintiffs' transparent attempt to circumvent state law, recognize the purely state-law basis for this entire action, and abstain.

**2.    This Court Should Abstain Pursuant to the *Colorado River* Abstention Doctrine.**

A corollary to *Burford* abstention is the notion that a federal court "has the power to abstain from exercising its jurisdiction over a case in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." *Gentry v. Wayne County.,* 2010 WL 4822749 at *2 (E.D. Mich. Nov. 22, 2010) (citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976). This power should be utilized when two criteria are met: (1) the federal and state suits are parallel, and (2) "abstention will actually serve the end of efficient court administration." *Id.*

When it filed its Complaint, Plaintiffs were well-aware that it was attempting to litigate the same issues it is actively litigating in numerous state courts. Specifically, there are ongoing and active cases in Michigan courts between Plaintiffs and the various Defendants, and/or Plaintiffs' insureds. These cases involve Plaintiffs' refusal to pay PIP benefits, forcing the insured to sue for benefits under the Act. It is a complete waste of this Court's resources to decide issues being decided elsewhere or to prohibit insureds, who are not parties to this case, from litigating legitimate claims they may have against Plaintiffs for payment of benefits,

22

and for this Court to entertain claims that have already effectively been decided by the Michigan Supreme Court. In *Covenant*, the Michigan Supreme Court determined, on a retroactive basis, that persons and entities such as Defendants may not maintain a cause of action against Plaintiffs or any other insurer to recover PIP benefits. Plaintiffs have already won their claim for Declaratory Relief (Count IX) to the extent they requested that this Court prohibit Defendants from receiving reimbursement from Plaintiffs for claims pursued by the Defendants. This Court cannot, in a decision in *this case*, prohibit Plaintiffs' insureds who are not parties to this case from pursuing reimbursement of no-fault benefits rightfully due and owing to them from Plaintiffs in state court actions.

This suit and the concurrent state suits are (or will be) parallel proceedings. The state court cases will likely involve the same parties (through individual insureds) and the same bills or claims for reimbursement of no-fault benefits. This litigation is duplicative and falls squarely in the first prong of the *Colorado River* test. The second prong of the *Colorado River* test is also met. "Efficient court administration" would be promoted by abstention here, because, among other factors, (1) Plaintiffs' rights are adequately protected in state court; (2) state courts have jurisdiction over Plaintiffs' claims that would be impacted by granting the declaratory relief requested; and (3) most notably, the basis for this suit is state law.

This Court should abstain and allow the state courts to properly and efficiently resolve any disputes under Michigan's No-Fault statutory scheme.

### 3. This Court Should Exercise Its Discretion and Decline Jurisdiction Over Declaratory Judgment Actions.

The Court should abstain from hearing this case based upon the discretionary standards defined in *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) and *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942). *Wilton* is one of several U.S. Supreme Court cases holding that federal courts are given substantial discretion in deciding whether to exercise declaratory relief jurisdiction. The U.S. Supreme Court set forth the discretionary standards in *Green v. Mansour*, 474 U.S. 64, 106 S. Ct. 423 (1985), describing 28 USC § 2201 as "an enabling Act, which confers a discretion on the court rather than an absolute right upon the litigant." *Green* at 72 (internal citations omitted). "The propriety of issuing a declaratory judgment may depend upon equitable considerations . . . and is also 'informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Id.* (internal quotations omitted).

In *Brillhart,* an insurer sought a declaration in federal court of non-liability on an insurance policy. The district court dismissed the action in favor of pending state garnishment proceedings between the parties. The Court explained that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court

24

presenting the same issues, not governed by federal law, between the same parties."

*Brillhart,* 316 U.S. at 495.  The Supreme Court in *Wilton* stated that "[d]istinct

features of the Declaratory Judgment Act…justify a standard vesting district courts

with greater discretion in declaratory judgment actions" and held that *Brillhart's*

discretionary standard applies in instances where only declaratory relief is sought.

*Wilton, 515* U.S. at 286.

In *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990), the Sixth

Circuit set forth the criteria considered in determining that declaratory ruling is

appropriate in a particular case:

> (1) when the judgment will serve a useful purpose in clarifying and settling the
> legal relations in issue, and
> (2) when it will terminate and afford relief from the uncertainty, insecurity, and
> controversy giving rise to the proceeding.

"It follows that when neither of these results can be accomplished, the court should

decline to render the declaration prayed." See also *Sentry Ins. Mut. Co. v. Flom's*

*Corp.,* 818 F. Supp. 187, 189-90 (E.D. Mich. 1993).  In this case, the declaratory

relief, if granted, would not settle the legal relation at issue and would actually create

unnecessary confusion among insurers, insureds, and treatment providers.

*Covenant* accomplished the first prong by prohibiting service providers or other

third-parties from maintaining direct causes of action against Plaintiffs.  The second

prong will be accomplished by allowing insureds to file their own lawsuits against

Plaintiffs, as permitted under the No-Fault Act, and a Court or jury determining the

reasonableness of services provided to the insured and the appropriate amount of reimbursement to the insured on a case-by-case basis.

### 4.    This Court Should Abstain Based Upon the *Scottsdale* Factors.

Courts have substantial discretion in deciding whether or not to hear or decide particular declaratory cases. See e.g., *Aetna Casualty and Sur. Co. v. Sunshine Corp., 74* F.3d 685 (6th Cir. 1996).  There are five factors used to determine whether or not to adjudicate a case; whether the declaratory action: (1) would settle the controversy, (2) would serve a useful purpose by clarifying the legal relations at issue, (3) is merely intended to advance "procedural fencing" or "a race for res judicata," (4) would increase friction between state and federal courts and improperly encroach upon state jurisdiction, and (5) whether there is a better or more effective alternative remedy. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir. 2008).

The first of these *Scottsdale* factors clearly favors declining to rule on Plaintiffs' claim for Declaratory Relief (Count IX). Even if this Court were to grant the relief requested, these same issues may be litigated in state court by individual insureds who are not parties to this case. No Michigan state court is bound to accept this Court's judgment, especially on an issue so inherently bound up in state law. To the contrary, a decision by this Court could easily end up contradicting state court opinions or jury verdicts and thus leaving the disputed questions farther from resolution, not closer to it.  For instance, this Court's granting of the declaratory

26

relief requested in this case will adversely affect the rights of the individual insureds listed in Exhibit 1 to the Complaint to recover reimbursement for medical treatment, services, and other expenses that Plaintiffs refused to pay based upon their filing of this lawsuit.

For the same reasons, the second *Scottsdale* factor supports declining jurisdiction. A declaratory judgment by this Court will not clarify the legal relations between Plaintiffs and Defendants. The potential for contradictory judgments will, instead, significantly muddy the water in this respect. In fact, the Sixth Circuit has "repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004).

As for "procedural fencing," it is apparent that Plaintiffs are attempting to force Defendants into a billing moratorium, which is relief that is not legally available to Plaintiffs. The *Covenant* decision does not impose a billing moratorium, but it ended Defendants' (and other similarly-situated service providers') ability to pursue payment of their invoices directly against Plaintiffs. This accomplishes essentially the same end as Plaintiffs are requesting in their claim for Declaratory Relief, but without improperly impairing the rights of insureds and individuals who are not party to this case.

*Scottsdale* factors #4 and #5 are truly decisive.  When a case involves only complicated and factual issues of state law, and there is no suggestion that a state court could not decide the issues fairly and impartially, federal courts should decline to issue declaratory relief.  *American Home Assurance Co. v. Evans,* 791 F.2d 61 (6th Cir. 1986).  In this case, there cannot be a "suggestion" that the state courts cannot decide the issue fairly and impartially—the Michigan Supreme Court *decided the issue.*  Therefore, this Court should not exercise its discretionary jurisdiction over Count IX of Plaintiffs' Complaint, and instead should dismiss it with prejudice.

## III.   Conclusion and Request for Relief.

For the foregoing reasons, Defendants request that the Court strike the identified paragraphs and Exhibit 3 of Plaintiffs' Complaint and that the Court abstain from hearing Plaintiffs' claim for declaratory judgment and dismiss Count IX of Plaintiffs' Complaint pursuant to its abstention power and Fed. R. Civ. P. 12(b)(6), and to dismiss Plaintiffs' entire Complaint in light of the Michigan Supreme Court's recent decision in *Covenant.*

Respectfully submitted,

JOELSON ROSENBERG PLC

/s/ Peter W. Joelson
Peter W. Joelson (P51468)
Emily Warren (P76675)


Dated: February 13, 2018

LAW OFFICES OF GARY R. BLUMBERG, PC

/s/ Gary R. Blumberg
Gary R. Blumberg (P29820)

<u>CERTIFICATE OF SERVICE</u>

NOW COMES the undersigned and hereby states that on February 13, 2018,

the above motion and brief and this Certificate of Service were e-filed and e-served

using the ECF system which will send notification of such filing to all counsel.


<u>/s/ Susan Brohman</u>
Susan Brohman

29