UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Plaintiffs,

v.

OMIC, LLC, d/b/a OAKLAND MRI;
LUCIA ZAMORANO, M.D., PLC, d/b/a
MICHIGAN BRAIN & SPINE
SURGERY CENTER; SUSAN
SWIDER; and LUCIA JOSEFINA-
SWIDER ZAMORANO, M.D.,

    Defendants.

Case No. 17-cv-13908
Hon. Victoria A. Roberts
Mag. Judge David R. Grand

_____

**DEFEFNDANTS' REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANTS' AMENDED MOTION TO STRIKE
AND MOTION TO DISMISS (DKT. #13)**

# CITED AUTHORITIES

*Chamberlain Mach. Works v. United States,* 270 U.S. 347 (1926).

*Ecco, Ltd. v. Balimoy Mfg. Co.,* 179 Mich. App. 748, 446 N.W.2d 546 (1989).

*Fogg v. Blair,* 139 U.S. 118 (1891).

*Kammer Asphalt Paving Co., Inc. v. East China Twp. Schs.,* 443 Mich. 176, 504 N.W.2d 635 (1993).

*Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S. Ct. 828 (1947).

*Pacheco v. Boar's Head Provisions Co.,* 2010 U.S. Dist. LEXIS 30463 (W.D. Mich. Mar. 30, 2010).

*Rice v. Wilson,* 225 F. 159 (D. Del. 1915).

*Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 739 N.W.2d 656 (2007).

*Worri Bank v. Citigroup Global Markets, Inc*., 2014 WL 3844778 (S.D.N.Y. Aug. 5, 2014).

## I. Introduction.

In their response, Plaintiffs attempt to reason that because other complaints containing similar allegations filed in the Eastern District of Michigan were not dismissed on initial Fed. R. Civ. P. 12(b)(6) motions, Plaintiffs' Complaint (Dkt. #1) in this case should not be dismissed. Significantly, the three cases Plaintiffs cite on page 6 of their corrected response (Dkt. #21) were filed *after* May 25, 2017, when the decision in *Covenant* was issued. The term Plaintiffs repeat endlessly in numerous litigations throughout this district is that the medical treatment was fraudulent because it was performed pursuant to a "predetermined testing protocol." (See Complaint, Dkt. #1, ¶ 396, 397, 401, 408, 426, 435, 449, 586(e)). Despite their allegations, Plaintiffs lack any medical evidence necessary to establish that the medical treatment provided to the patients listed in the Complaint was fraudulent or performed pursuant to a "predetermined testing protocol." Plaintiff attempted to obfuscate the lack of medical evidence with irrelevant, salacious, and inflammatory allegations of Dr. Zamorano's alleged past "wrongful" conduct during her employment with Wayne State University, her personal finances, personal relationship with Defendant Swider, and a litany of other throwaway allegations against individuals who are not party to this case and whose alleged misconduct, even if true, does not relate in any way to the allegations against Defendants in *this* case or the medical treatment allegations. For example, Plaintiffs made allegations

against Dr. James, but failed to mention that Dr. James's license was not suspended in connection with his radiology practice or MRI readings, Dr. James's license was in good standing anytime he was performing services for OMIC, and that his license has been fully restored. The number of referrals from Dr. James is *de minimus*, and any overlap between patients is likely coincidental.

Plaintiffs will undoubtedly attempt to establish the alleged fraudulent medical treatment through statistical conjecture supported by the testimony of a paid expert hired and coached by counsel purportedly supported elaborate charts and tables designed to give the illusion of relevant data. The Complaint is glaringly improper, mainly because of the irrelevant, false and deliberately misleading allegations against Dr. Zamorano and/or Susan Swider.

## II. Defendants' Response to Plaintiffs' Summary of "Relevant Background."

Plaintiffs' "Introduction and Relevant Background" section (Dkt. #21, p. 1-5) is replete with irrelevant, salacious, and intentionally misleading allegations against Dr. Zamorano and Susan Swider, all which should be stricken. Dr. Zamorano is a neurosurgeon and her patients are mainly individuals who have been referred for surgical procedures because either they have failed conservative treatment, including physical therapy and injections, or due to severity of their condition. Plaintiffs' proclamation that "electrodiagnostic testing should be extraordinarily rare for a neurosurgical practice" is simply false and not sufficient to support its allegations of

medical fraud. Each of Dr. Zamorano's patients is thoroughly examined at each office encounter, including all elements of a history and physical examination and assessment. In a neurosurgical practice, it is common to order electrodiagnostic testing on patients who need to be evaluated both before and after surgical procedures. There is no "predetermined testing protocol." For each test ordered, there was a reasonable and necessary reason for the test and for the subsequent treatment — the majority of Dr. Zamorano's patients have serious medical issues and are identified as surgical candidates through testing and more conservative prior treatments. The charges for these tests and treatments are reasonable and customary in the geographical area and, under the payment procedures utilized in the No Fault Act, cannot be the basis of any fraud claim.

Despite Plaintiffs' unrepentant attempt to disparage Dr. Zamorano with accusations of misconduct while at Wayne State University, Dr. Zamorano is a well-respected surgeon and was a Clinical Professor of Neurosurgery at Wayne State University until 2014, and is currently a Clinical Professor of Neurosurgery at Oakland University William Beaumont School of Medicine. The proceedings involving Wayne State University resulted in complete restitution of Dr. Zamorano's position, complete with retroactive validation *and pay*.

Defendant Susan Swider is not a practice administrator for Michigan Brain and Spine. Since 2006, she has been exclusively the controller. She does not appear

at the offices or clinics, and exclusively works with the executive assistant to assess and control payments for vendors. She is not involved in any clinical or insurance-billing activity and does not have access to patient information.

Defendant OMIC, Inc., which was formed in 2007, charges rates for services that are well-within the range of usual and customary rates in the geographic area. It is customary for similarly-situated physicians and clinics to charge for the use of contrast agents, x-rays, 3-dimensional renderings, and renderings of MRI images. In fact, since *Plaintiffs* determine what is "usual and customary" under the No Fault Act to charge for a specific service or procedure by paying a certain amount for claims submitted by OMIC, the rates charged by Defendant cannot be the basis of any claim under any circumstances. Consequently, Plaintiffs often pay less than the amount charged by OMIC. Plaintiffs also presumably only pay claims submitted by OMIC when the claim is for a procedure or service that Plaintiffs deemed to be reasonably medically necessary under the No Fault Act. Defendants routinely accept any amount that Plaintiffs unilaterally chose to pay for a certain claim and do not pursue the remainder of the claim in litigation.

Dr. Zamorano has never participated in the business affairs of OMIC, or received any direct or indirect benefits from OMIC. Any referrals OMIC receives from Dr. Zamorano are the result of OMIC's history of providing exceptional

service, timely reports, and excellent quality of imaging and protocols. All MRIs that were billed to an insurer were requested or referred by a healthcare provider.

### III. Plaintiffs' Charts Do Not Satisfy Rule 9 Pleading Standards.

In their Complaint, Plaintiffs go to great lengths to provide its biased medical opinion (conjured up by Plaintiffs' attorneys) as to what it considers to be appropriate medical treatment for auto-related injuries. The Complaint essentially adopts an intentionally skewed statistical analysis based on selected medical records rather than the entire medical files of the patients at issue and relies solely on alleged, but unidentified, patterns in Defendants' treatment and documentation. Plaintiffs attempt to mislead this Court with their purported "evidence" by referring to their ***attorney-prepared summary charts*** attached to or included in the Complaint as sufficient specificity required to overcome their pleading deficiencies. The attorney-prepared charts are not evidence; they are conclusory and unsupported inadmissible statements made by counsel and are simply not sufficient under Rule 9(b). Rule 9(b) requires each element of fraud be pled and proved with particularity and prohibits a party from maintaining a cause of action based on unidentified patterns, pervasive yet amorphous protocols, "atmospheric, and … vague and conclusory allegations of wrongdoing." *Worri Bank v. Citigroup Global Markets, Inc*., 2014 WL 3844778 (S.D.N.Y. Aug. 5, 2014).

The particularity requirement stretches across time and place and is based on fundamental principles of fair play. See *Fogg v Blair,* 139 U.S. 118, 127 (1891) ("As [the defendant] impugned the good faith of the transaction between the company and the contractors, it was incumbent upon him to state the essential, ultimate facts upon which his cause of action rested..."); *Chamberlain Mach. Works v. United States,* 270 U.S. 347, 349 (1926) ("To show a cause of action [for fraud] it was necessary that the petition state distinctly the particular acts of fraud...with such definiteness and reasonable certainty that the court might see that, if proved, they would warrant the setting aside of the settlement."); *Rice v. Wilson,* 225 F. 159, 163 (D. Del. 1915) (Equity requires that "[f]raud must be not only particularly alleged but strictly proved.").

### IV.     Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law.

"Unjust enrichment is an equitable doctrine that is based on the principle that a party should not be allowed to profit at another's expense." *Pacheco v. Boar's Head Provisions Co.,* 2010 U.S. Dist. LEXIS 30463, at *13 (W.D. Mich. Mar. 30, 2010) (citing *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schs.,* 443 Mich. 176, 504 N.W.2d 635, 640 (1993)). As an initial matter, Plaintiffs are not entitled to equity. It is axiomatic that "he who seeks equity must do equity." *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 522, 67 S. Ct. 828, 831 (1947). Plaintiffs' conduct in this case and their unlawful policies of wrongfully delaying, denying, and

6

diminishing benefits for its insureds, including those at issue in the Complaint, precludes Plaintiffs from receiving equity.

Under Michigan law, unjust enrichment is defined as the "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 739 N.W.2d 656, 663 (2007). The equitable doctrine of unjust enrichment is employed with caution because it "vitiates normal contract principles." *Kammer*, 504 N.W.2d at 640. "Equity will not take jurisdiction where there is a full, complete, and adequate remedy at law, unless it is shown that there is some feature of the case peculiarly within its jurisdiction." *Ecco, Ltd. v. Balimoy Mfg. Co.,* 179 Mich. App. 748, 751, 446 N.W.2d 546, 548 (1989). Plaintiffs have the same pleading issues with their unjust enrichment claim as they do with their fraud-based claims. The unjust enrichment claim is based solely on the conclusion that Defendants received insurance benefits from Plaintiffs as the result of or through acts of fraud. Plaintiffs cannot rely on their conclusory allegations of fraud to support either claim.

Respectfully submitted,

| JOELSON ROSENBERG PLC | LAW OFFICES OF GARY R. BLUMBERG, PC |
|---|---|
| /s/ Peter W. Joelson | /s/ Gary R. Blumberg |
| Peter W. Joelson (P51468) | Gary R. Blumberg (P29820) |
| Emily Warren (P76675) | |

## CERTIFICATE OF SERVICE

  I hereby certify that on April 9, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

    By: <u>/s/ Susan Brohman</u>
      Susan Brohman